UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Plastomold Industries Ltd., <br><br> Plaintiff, <br><br> -against- <br><br> Sharps Technology, Inc., <br><br> Defendant. | Case No.: <br><br> **COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiff, Plastomold Industries Ltd. ("Plaintiff" or "Plastomold"), by its attorneys, Abrams Fensterman, LLP, as and for its Complaint against defendant, Sharps Technology, Inc. ("Defendant" or "Sharps"), alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff, Plastomold, an Israeli company, is an engineering company focused on developing safety syringes. Plastomold collaborates with healthcare professionals during its design and testing processes. Among other things, Plastomold designs and builds machines for other companies' manufacturing of syringes.

2. Sharps is a NASDAQ listed (STSS) medical device company with offices in Melville, New York. Sharps has designed and patented various safety syringes. Sharps operates a manufacturing facility in Hungary, owned by a Hungarian medical company.

3. Sharps has two main safety syringe product lines, Securegard and Sharps Provensa. Sharps has distribution agreements with several affiliated companies for the Securegard line. There have been delays in the commercialization of the Sharps Provensa product line because the product's combination of specialized technology has created the need for further optimization related to the final assembly steps for the product.

1

4. Plastomold and Sharps have had a working relationship for more than three years. Plastomold has delivered to Sharps a production line, including an assembly machine for Sharps' use in the manufacturing and assembly process of their safety syringes, specifically the Sharps Provensa line. The machines are located in the manufacturing facility Sharps operates in Hungary.

5. Plastomold has provided constant improvements and maintenance on the assembly machines and their related parts over the years. Despite Plastomold's consistent deliverables of parts and maintenance of the assembly machines, Sharps has failed to pay Plasto for outstanding invoices that have accrued on the most recently delivered assembly machine and its related parts, and for all of the maintenance, improvements, scheduled engineering, and regulatory compliance work completed by Plastomold on the machine.

6. As of the date hereof, Sharps owes Plastomold not less than a total of $1,762,000 for the products and services delivered by Plastomold.

7. As set forth below, Plastomold now brings claims for breach of contract, breach of good faith and fair dealing, unjust enrichment and conversion.

**PARTIES**

8. Plaintiff, Plastomold Inc. is duly organized and existing under the laws of the State of Israel, with its principal place of business located at 1 Hasolel Street, Holon, Israel 5885328.

9. Upon information and belief, Defendant, Sharps Technology, Inc., is organized and existing under the laws of the State of Nevada, with its principal place of business located at 105 Maxess Road, Melville, New York 11747.

10. Sharps is listed on the NASDAQ stock exchange under the symbol STSS.

**JURISDICTION AND VENUE**

11. Subject matter jurisdiction is based upon 28 U.S.C. §1332, because there is

complete diversity of citizenship between the parties and the amount in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand ($75,000) Dollars.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), because Defendant's principal place of business is located in this District and because a substantial part of the events giving rise to this action occurred in this District.

13. This Court has personal jurisdiction over Defendant because: (a) the claims asserted herein arise in part out of business conducted by Defendant in this State; (b) Defendant committed tortious acts or omissions within this State; and (c) Defendant committed or caused a tortious injury in this State, and Defendant regularly conducts business in this State and/or derives substantial revenue from goods used or consumed or services rendered in this State.

## FACTUAL BACKGROUND

### *The Parties*

14. Plaintiff Plastomold is in the business of plastic molding for complex-structured products, designing and developing molds for high-tech products and medical devices. In particular, Plastomold is a leader in complicated engineering that requires precisely-designed, high-quality molds. Among other things, it partners with its customers to turn a product concept into a functional product. Plastomold works with its clients from early stages of concept development, through the formation of test molds to product manufacturing.

15. Upon information and belief, Defendant Sharps is a medical device company that is primarily in the business of designing and patenting safety syringes. According to its most recent 10-K filing, Sharps purchases, develops, and commercializes intellectual property relating to smart safety syringe products. Upon further information and belief, Sharps owns and operates a 41,000 square foot manufacturing facility in Hungary, which is used primarily for the manufacture

of its syringes.

16. Sharps has two primary product lines of safety syringes: Sharps Sureguard and Provensa. These products have been designed to address the three primary administration concerns with syringe delivery systems: accidental injuries, wasted injectable medicine lost inside the syringe, and reuse prevention.

*__Plastomold Provides Sharps With Products and Services__*

17. In or around December 2018, Plastomold began providing Sharps with products and services in connection with Sharps' production of its Provensa line in Hungary.

18. In March 2021, Plastomold provided to Sharps a total of $111,000 worth of services. These services provided by Plastomold are set forth in Plastomold's Export Invoice T218, dated March 31, 2021, which was sent by Plastomold to Sharps. A true and correct copy of Export Invoice T218 is annexed hereto as **Exhibit A**.

19. As of the date hereof, Sharps has failed to make payment of the amount of $111,000 due and owing pursuant to Export Invoice T218.

20. In April 2021, Plastomold completed a plasma treatment system for Sharps, delivering to Sharps: (a) an actuator printing machine, priced at $85,000 and (b) a barrel scale printing machine, priced at $74,000. These products provided by Plastomold, for a total of $159,000, are set forth in Plastomold's Export Invoice T219, dated April 30, 2021, which was sent by Plastomold to Sharps. A true and correct copy of Export Invoice T219 is annexed hereto as **Exhibit B**.

21. As of the date hereof, Sharps has failed to make payment of the amount of $159,000 due and owing pursuant to Export Invoice T219.

22. In May 2021, Plastomold completed a needle occlusion test system.

23. In June 2021, Plastomold completed a reduction of the upper ribs of the syringes to allow printing.

24. On or about June 11, 2021, Sharps issued to Plastomold Purchase Order No. 1055. A true and correct copy of Purchase Order No. 1055 is annexed hereto as **Exhibit C-1**.

25. Sharps' Purchase Order No. 1055 set forth Sharps' order of a syringe assembly machine at a price of $1,850,000. As stated, Sharps had already made payment in the amount of $650,000. Purchase Order No. 1055 set forth the terms of the remaining $1,200,000 due and owing by Sharps. Sharps would make twelve monthly payments of $100,000 commencing on June 30, 2021.

26. In or about July 2021, pursuant to Purchase Order No. 1055, Plastomold delivered the assembly machine to Sharps in Hungary.

27. Sharps made the monthly payments due pursuant to Purchase Order No. 1055, except for the last payment due in the amount of $100,000.

28. As of the date hereof, Sharps has failed to make payment in the amount of $100,000, which is due and owing by Sharps pursuant to Purchase Order No. 1055.

29. In addition, Sharps' Purchase Order No. 1055 stated: "Maintenance Agreement – 2 years (see attached for terms) Additional terms 1) 200,000 shares of common stock and 2) 200,000 stock options, subject to terms in the attached document."

30. The "attached document" was also drafted by Sharps on Sharps' letterhead, dated June 11, 2021, and was entitled "Addendum to PO #1055 Plasto Designs Solutions (Plasto)" (the "Purchase Order No. 1055 Addendum"). A true and correct copy of the Purchase Order No. 1055 Addendum is annexed hereto as **Exhibit C-2**.

31. Sharps' Purchase Order No. 1055 Addendum was accepted by Plastomold, as reflected by the signature of Plastomold's CEO, Boaz Zer, on June 16, 2021.

32. The Purchase Order No. 1055 Addendum sets forth the terms of the "Maintenance Agreement" referenced in Purchase Order No. 1055: "Plasto agrees to service the Assembly Machine line for a period of two (2) years or 100 million units, from delivery and setup, at a cost of $.01 per unit sold by Sharps Technology."

33. This Maintenance Agreement term of the Purchase Order No. 1055 Addendum was intended by the parties to be part of the purchase price paid by Sharps to Plastomold for the delivery and assembly of the syringe production machine by Plastomold. That part of the purchase price owed to Plastomold was $1,000,000, as reflected in the Purchase Order No. 1055 Addendum's calculation of $.01 per unit for 100 million units.

34. Although Sharps decided to not commence production after the machine had been delivered and assembled by Plastomold, Plastomold still expected to be paid the amount that was due and owing to it, as the parties agreed, in the amount of $1,000,000. As of the date hereof, Sharps has failed to make payment of the amount of $1,000,000 due and owing pursuant to the Purchase Order No. 1055 Addendum.

35. In April, May, June and July 2021, Plastomold provided to Sharps a total of $67,300 worth of additional services. These services provided by Plastomold are set forth in Plastomold's Export Invoice T220, dated July 31, 2021, which was sent by Plastomold to Sharps. A true and correct copy of Export Invoice T220 is annexed hereto as **Exhibit D**.

36. As of the date hereof, Sharps has failed to make payment of the amount of $67,300 due and owing pursuant to Export Invoice T220.

37. In February, March and April 2022, Plastomold provided to Sharps a total of $88,900 worth of additional products and services. These products and services provided by Plastomold are set forth in Plastomold's Export Invoice T221, dated April 30, 2022, which was sent by Plastomold to Sharps. A true and correct copy of Export Invoice T221 is annexed hereto as **Exhibit E**.

38. As of the date hereof, Sharps has failed to make payment of the amount of $88,900 due and owing pursuant to Export Invoice T221.

39. In June, July and August 2022, Plastomold provided to Sharps a total of $85,100 worth of additional products and services. These products and services provided by Plastomold are set forth in Plastomold's Export Invoice T222, dated August 31, 2022, which was sent by Plastomold to Sharps. A true and correct copy of Export Invoice T222 is annexed hereto as **Exhibit F**.

40. As of the date hereof, Sharps has failed to make payment of the amount of $85,100 due and owing pursuant to Export Invoice T222.

41. In November 2022, Plastomold provided to Sharps additional engineering services in the amount of $15,000 and regulatory services in the amount of $7,500, for a total of $22,500. These services provided by Plastomold are set forth in Plastomold's Export Invoice EI220050, dated November 28, 2022, which was sent by Plastomold to Sharps. A true and correct copy of Export Invoice EI220050 is annexed hereto as **Exhibit G**.

42. As of the date hereof, Sharps has failed to make payment of the amount of $22,500 due and owing pursuant to Export Invoice EI220050.

43. In December 2022, Plastomold provided to Sharps additional engineering services in the amount of $15,000 and regulatory services in the amount of $7,500, for a total of $22,500.

These services provided by Plastomold are set forth in Plastomold's Export Invoice EI230002, dated January 12, 2023, which was sent by Plastomold to Sharps. A true and correct copy of Export Invoice EI230002 is annexed hereto as **Exhibit H**.

44. As of the date hereof, Sharps has failed to make payment of the amount of $22,500 due and owing pursuant to Export Invoice EI230002.

45. In February 2023, Plastomold provided to Sharps additional engineering services in the amount of $15,000 and regulatory services in the amount of $7,500, for a total of $22,500. These services provided by Plastomold are set forth in Plastomold's Export Invoice T231, dated February 28, 2023, which was sent by Plastomold to Sharps. A true and correct copy of Export Invoice T231 is annexed hereto as **Exhibit I**.

46. As of the date hereof, Sharps has failed to make payment of the amount of $22,500 due and owing pursuant to Export Invoice T231.

47. In March 2023, Plastomold delivered to Sharps a vision system for Sharp's 1ml Provensa syringe assembly machine in Hungary, at the price of $94,000. The final payment of this product that was delivered by Plastomold, in the amount of $28,200, is set forth in Plastomold's Export Invoice T234, dated March 31, 2023, which was sent by Plastomold to Sharps. A true and correct copy of Export Invoice T234 is annexed hereto as **Exhibit J**.

48. As of the date hereof, Sharps has failed to make payment of the amount of $28,200 due and owing pursuant to Export Invoice T234.

49. In March 2023, Plastomold also delivered to Sharps the design history file ("DHF") for the 1ml Provensa syringe assembly machine in Hungary, at the price of $55,000. A DHF is a formal, organized documentation of all the product design and development processes pertaining to a finished medical device, in this case the Provensa syringes. The DHF delivered by Plastomold

is set forth in Plastomold's Export Invoice T235, dated March 31, 2023, which was sent by Plastomold to Sharps. A true and correct copy of Export Invoice T235 is annexed hereto as **Exhibit K**.

50. As of the date hereof, Sharps has failed to make payment of the amount of $55,000 due and owing pursuant to Export Invoice T235.

51. On or about May 1, 2023, Plastomold sent Sharps a letter requesting payment in full within seven days of all of the foregoing outstanding amounts due and owing: (a) $111,000 for Export Invoice T218; (b) $159,000 for Export Invoice T219; (c) $100,000 for Purchase Order No. 1055; (d) $1,000,000 for the Purchase Order No. 1055 Addendum (e) $67,300 for Export Invoice T220; (f) $88,900 for Export Invoice T221; (g) $85,100 for Export Invoice T222; (h) $22,500 for Export Invoice EI220050; (i) $22,500 for Export Invoice EI230002; (j) $22,500 for Export Invoice T231; (k) $28,200 for Export Invoice T234; and (l) $55,000 for Export Invoice T235.

52. The total of the foregoing amounts due and owing is $1,762,000, plus interest that has accrued and is accruing.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Breach of Contract)**

53. Plaintiff Plastomold repeats and realleges the foregoing allegations with the same force and effect as if fully set forth herein.

54. Each of the (a) $111,000 for Export Invoice T218; (b) $159,000 for Export Invoice T219; (c) $100,000 for Purchase Order No. 1055; (d) $1,000,000 for the Purchase Order No. 1055 Addendum (e) $67,300 for Export Invoice T220; (f) $88,900 for Export Invoice T221; (g) $85,100 for Export Invoice T222; (h) $22,500 for Export Invoice EI220050; (i) $22,500 for Export Invoice EI230002; (j) $22,500 for Export Invoice T231; (k) $28,200 for Export Invoice T234; and (l)

$55,000 for Export Invoice T235 (collectively, the "Invoices and Purchase Order"), is, or reflects, a valid and enforceable contract between Plastomold and Sharps.

55. Plastomold performed its obligations pursuant to the Invoices and Purchase Order by delivering to Sharps the products and services reflected in the Invoices and Purchase Order.

56. Sharps breached its obligations under the Invoices and Purchase Order by failing to make the payments due thereunder, despite taking delivery of, and benefiting from, the products and services reflected in the Invoices and Purchase Order.

57. The breaches of the Invoices and Purchase Order by Sharps have resulted in damages to Plastomold.

58. By reason of the foregoing, Plastomold has suffered damages in an amount to be determined at trial, but not less than $1,762,000, plus interest that has accrued and is accruing.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Breach of the Implied Duty of Good Faith and Fair Dealing)**

59. Plaintiff Plastomold repeats and realleges the foregoing allegations with the same force and effect as if fully set forth herein.

60. The implied covenant of good faith and fair dealing is a pledge that neither party to a contract shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruit of the contract, even if the terms of the contract do not explicitly prohibit such conduct.

61. Sharps owed an implied duty of good faith to Plastomold with respect to the Invoices and Purchase Order.

62. Sharps breached its duty of care by, among other things, refusing to make the payments due and owing as reflected in the Invoices and Purchase Order.

63. Even if the terms of the agreements between Plastomold and Sharps as reflected in the Invoices and Purchase Order did not explicitly prohibit Sharps's conduct, Sharps injured the right of Plastomold to receive the fruits of the agreements it had with Sharps to provide Sharps with the products and services reflected in the Invoices and Purchase Order, which products and services Plastomold delivered.

64. As a proximate cause of Sharps's breach of its duty owed to Plastomold, Plastomold has been injured.

65. By reason of the foregoing, Plastomold has suffered damages in an amount to be determined at trial, but not less than $1,762,000, plus interest that has accrued and is accruing.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Unjust Enrichment)**

66. Plaintiff Plastomold repeats and realleges the foregoing allegations with the same force and effect as if fully set forth herein.

67. Plastomold performed its obligations pursuant to the Invoices and Purchase Order by delivering to Sharps the products and services reflected in the Invoices and Purchase Order.

68. Sharps failed to make the payments due under the Invoices and Purchase Order, despite taking delivery of, and benefiting from, the products and services reflected in the Invoices and Purchase Order.

69. Sharps, therefore, has been unjustly enriched at Plastomold's expense.

70. It is against equity and good conscience to permit Sharps to retain the benefits of the products and services delivered by Plastomold without paying for such products and services.

71. By reason of the foregoing, Plastomold has suffered damages in an amount to be determined at trial, but not less than $1,762,000, plus interest that has accrued and is accruing.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Conversion)

72. Plaintiff Plastomold repeats and realleges the foregoing allegations with the same force and effect as if fully set forth herein.

73. Plastomold delivered to Sharps the products and services reflected in the Invoices and Purchase Order.

74. Plastomold accepted the products and services reflected in the Invoices and Purchase Order, and benefited from the same, but has refused to pay for such products and services, valued at $1,762,000.

75. By retaining the products and services delivered by Plastomold and refusing to pay for such products and services, Sharps has exercised control over money to which it is not rightfully entitled.

76. As a direct result of Sharps' conversion and misappropriation of such monies, Plastomold has sustained and will continue to sustain significant pecuniary injury.

77. By reason of the foregoing, Plastomold has suffered damages in an amount to be determined at trial, but not less than $1,762,000, plus interest that has accrued and is accruing.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Plastomold respectfully demands judgment against Defendant Sharps as follows:

(i) On the First Cause of Action, awarding Plaintiff damages against Defendant in an amount to be determined at trial, but not less than $1,762,000 plus interest that has accrued and is accruing;

(ii)     On the Second Cause of Action, awarding Plaintiff damages against Defendant in an amount to be determined at trial, but not less than $1,762,000 plus interest that has accrued and is accruing;

(iii)    On the Third Cause of Action, awarding Plaintiff damages against Defendant in an amount to be determined at trial, but not less than $1,762,000 plus interest that has accrued and is accruing;

(iv)    On the Fourth Cause of Action, awarding Plaintiff damages against Defendant in an amount to be determined at trial, but not less than $1,762,000 plus interest that has accrued and is accruing; and

(v)     On all Causes of Action, for such other and further relief as this Court shall deem just, proper and equitable.

Dated: Brooklyn, New York
       April 5, 2024

**ABRAMS FENSTERMAN, LLP**

By: /s/*Mordecai Geisler*_____
Mordecai Geisler
1 MetroTech Center, Suite 1701
Brooklyn, New York 11201
(718) 215-5300
mgeisler@abramslaw.com
*Attorneys for Plaintiff*
*Plastomold Industries Ltd.*